**Nilesh PAGARE, Appellant,**

v.

**Seema PAGARE, Appellee.**

No. 05–09–01342–CV.

Court of Appeals of Texas, Dallas.

June 21, 2011.

Clarke Wilcox, The Law Office of J. Clarke Wilcox, Irving, TX, for Appellant.

Yogesh Khema Nanji, Richardson, TX, for Appellee.

Before Justices MOSELEY, MARTIN RICHTER, and LANG–MIERS.

## OPINION

Opinion By Justice LANG–MIERS.

Appellant Nilesh Pagare (Husband) appeals from a final decree of divorce. Husband challenges the trial court's order granting the motion for new trial filed by appellee Seema Pagare (Wife), the exclusion of certain evidence, the disproportionate division of the community estate, the disposition of the marital residence, and the awards of child support and attorneys' fees. We resolve Husband's issues against him and affirm the final decree of divorce.

## BACKGROUND

Husband and Wife are both software engineers from India. They met and married in 1999, after a family friend "introduced the proposal in the form of an arranged marriage." In 2003, the couple built a house in Irving, Texas, after they were both recruited to work for a technology company in the area. In October 2005, during a trip to India, the couple separated. In November 2005, while they were both still in India, Wife learned she was pregnant. Husband returned to the United States in December 2005. Wife remained in India and gave birth to the couple's daughter in July 2006.

Husband originally filed for divorce in May 2006 on the grounds of insupportability and abandonment. He obtained substituted service on Wife after submitting an affidavit stating, in part, as follows:

> During a trip to in [sic] October of 2005, my wife, Seema Nilesh Pagare, came under the undue influence of her parents and extended family and refused to return to the United States with me. Further she still refuses to return. I have tried to telephone her repeatedly and have not been able to even locate her. I have written numerous letters, she has given no response. Additionally, her parents refuse to give any indication of her whereabouts or to confirm whether she might be living with them.

In Husband's original petition, he alleged that "[n]o children are involved in this divorce case." In an amended petition filed in August 2006, Husband changed the language regarding children and alleged that he "is unaware of any children involved in this divorce case." In both his original and amended petitions Husband alleged that the value of the marital estate is "not more than $50,000."

Husband obtained a default final decree of divorce in October 2006 after Wife did not file an answer or otherwise appear. Among other things, the default decree (1) stated that "there is no child of the marriage," (2) awarded Husband $58,260 in expenses to be paid from Wife's separate property due to Wife's "abandonment" of Husband, (3) awarded the couple's residence to Husband, subject to the mortgage, (4) awarded Wife's retirement accounts to Husband, and (5) awarded Wife's share of Husband's retirement accounts to Husband.

Wife learned about the default decree in 2007 when she was unable to access her bank accounts. Wife contacted her bank and learned that her accounts had been garnished as a result of the default decree. Wife hired a lawyer and filed a motion for new trial. In her second amended motion for new trial, Wife argued that she was entitled to a new trial for several alternative reasons, including because the citation was defective and because "Husband procured the service of citation and default judgment by fraud." With respect to her fraud allegation, Wife alleged, for example, that (1) while they were in India, Husband took Wife's passport and travel documents and "physically removed Wife out of the house," leaving her "stranded outside the United States without legal means to re-enter the United States," (2) Wife called Husband in November 2005 and told him she was pregnant, and (3) "Husband knew where Wife was and could have obtained personal service." In November 2007, the trial court conducted a hearing on Wife's motion for new trial and granted the motion.

After the trial court granted her motion for new trial, Wife counter-petitioned for divorce on the grounds of insupportability and abandonment. In her counter-petition, Wife asked the trial court to award her a disproportionate share of the marital estate based on, for example, (1) fault in the breakup of the marriage, (2) disparity of earning power, and (3) actual and constructive fraud committed by Husband.

The trial court held a final hearing at which the couple and two other witnesses testified. During the hearing, the testimony and other evidence concerning the couple's assets and earnings was undisputed. The disputed testimony and other evidence centered on two main subjects: (1) the disagreement that occurred in Husband's parents' house in India in October 2005 and gave rise to the couple's separation, and (2) the couple's communications with each other after their separation.

Husband essentially blamed Wife for the disagreement that prompted the separation. Husband testified that towards the beginning of what was supposed to a four- or five-week trip to India, the couple was at Husband's parents' house. According to Husband, when Wife's parents arrived to pick her up for a previously scheduled visit, Wife "got angry" and "ran off with her parents slamming the door," leaving behind all of her travel documents and other belongings, because Husband did not stand up quickly enough to "touch on in-laws' feet to take the blessing."

Wife, on the other hand, essentially blamed Husband for the disagreement that prompted the separation. Wife testified that when her parents arrived at her in-laws' house to pick her up, Husband and his parents and sister started verbally abusing and insulting Wife. According to Wife, Husband and his mother "snatched" her suitcase out of her hand and said, "We aren't giving you your luggage." Wife testified that she was "literally forced to leave the house" without any of her travel documents or other belongings.

With respect to the couple's post-separation communications, Husband testified

that he had no communications with Wife for over one year because he could not locate her. Husband testified that he went to Wife's parents' house in November 2005 to try to find her and return her travel documents, but the house was locked and no one was there. Husband testified that he "tried calling and calling the numbers" he knew, but he did not talk to Wife after that point because he "didn't know where they were living." In December 2005, he "gave up" and decided to return to the United States. Husband was asked whether Wife told him that she was pregnant before he left India, and he responded, "Absolutely not." Husband also denied that the couple's friend, Ali Khan, spoke to Husband after he returned from India about the fact that Wife was pregnant. Husband testified that he first learned about the "possibility of [ ] being a father" in July 2006 when he received an email from a friend's husband congratulating him on the child's birth. Husband testified that after their fight in October 2005, his first communication with Wife was around January 11, 2007, when he received an email from her.

Wife, on the other hand, testified that she talked to Husband on November 16, 2005, when she called to tell him she was pregnant. She also testified that she was staying at her parents' house after the separation, and although Husband knew where she was and knew her email addresses, he did not contact her or try to visit. Wife also testified that because Husband refused to return her travel documents, her green card expired and she lost her ability to return to live and work in the United States.

Wife's testimony was supported by the testimony of Ali Kahn, the couple's mutual friend. Kahn testified that he has known the Pagares for nine years. He first met the Pagares when he hired them in 2000.

Over time their work relationship turned into a close friendship. After the Pagares left for India in October 2005, they both spoke to Kahn by telephone on multiple occasions. According to Kahn, Husband knew where Wife was, and knew she was pregnant. Kahn testified that he called Wife in India using the telephone number that Husband gave him. Kahn encouraged Husband and Wife to reconcile. He also encouraged Husband to return Wife's travel documents, but Husband told Kahn that he was still angry and did not want to give them back. In February 2006, Kahn learned that Wife was experiencing "some sort of pregnancy complications." He talked to Husband and encouraged him to talk to Wife. Husband argued with Kahn and they did not speak again after that conversation.

The couple's primary assets included a house in Irving, money in various bank and retirement accounts, and three vehicles. Husband testified that his annual income at the time of the divorce was around $130,000. Husband also testified that during the marriage he transferred $37,550 to a bank account in India that he uses to support his family in India. He also testified that after the default decree was entered, he successfully garnished Wife's bank accounts, totaling in excess of $55,000, and had at least one of the accounts restyled in his name.

Wife testified that her annual income was $75,000 when she was working in the United States. In India she was earning $1,469 per month from September 2008 until she lost her job in April or May 2009. With respect to her request that the trial court award her a disproportionate share of the marital estate, Wife testified as follows:

Q  Are you asking the court to grant you a disproportionate share of the marital estate?

A  Yes.

Q  And is that related to the fault in the break-up of the marriage?

. . .

A  Yes.

Q  And fault on his part?

A  Yes. I want the financial support for the child.  Health-wise [she] is not doing very well because she's having some skin allergies.  And a couple of months ago she has been diagnosed with baby asthma, which is a baby lung problem.

Q  Baby asthma?

A  Yes. It's—she's being treated right now for that.

Q  Also you're seeking a disproportionate share because of fraud on the community brought on by your husband?

A  Yes, because everything was done without my knowledge and was done behind my back.

Q  Additionally, the disparity of the earning power between the spouses and your ability to support yourself, that's changed now because of what he's done?

A  Yes.

Q  And you no longer have the opportunity to have a $75,000–a–year job, do you?

A  Yes. Because of the huge gap in my career I'm not able to get a right job and not [sic] to get the type of salary which I was earning in the U.S.

Q  Additionally, you'll need future support is also one of the reasons that you'll need—

A  Yes.

Q  —a disproportionate share?

A  And my ability to enter the United States has been completely closed out because of Mr. Pagare.  The child was supposed to be born here, but today she can't even enter the country.  Even getting a passport for her was a huge deal because no country can issue a passport without her father's signature.

Wife also testified that before the hearing began, she was served with a lawsuit filed by Husband.  The petition in that lawsuit, which was admitted into evidence without objection, asserts a cause of action against Wife for "Hiding the Child" and states that Husband is seeking $500,000 in damages for "mental anguish, loss of consortium, and loss of benefit of a relationship with the child."  Wife testified that she will have to "expend additional fees" to defend herself in that case.

Wife testified that she incurred $33,680 in attorneys' fees in this case.  Wife's counsel also testified that Wife incurred $33,680 in reasonable and necessary attorneys' fees.  In response, Husband did not submit any controverting evidence about Wife's attorneys' fees or otherwise challenge Wife's request for attorneys' fees.

After the hearing the trial court issued the final decree of divorce, along with findings of fact and conclusions of law.  The trial court found that the total value of the community estate was approximately $450,000.  The trial court also found that "Wife should be awarded a disproportionate share of the marital estate," and based its decision on the following factors:

Husband's fault in the break-up of the marriage[;] benefits [W]ife may have derived from the continuation of the marriage that she will no longer receive[;] disparity of earning power of the spouses resulting in [W]ife['s] need of further means to support herself; gifts of U.S. dollar funds from the community estate given by [H]usband to his family[;] and attorneys fees and costs to be paid to [W]ife's attorneys.

The trial court also found that there is one child of the marriage. It appointed Wife as sole managing conservator and Husband as possessory conservator. The trial court found that the child was born in India and declined to make any orders regarding Husband's access to the child in India. The trial court also found that Husband's net resources are $7,500 per month and, using the guidelines under section 154.125 of the Texas Family Code, ordered him to pay $1,500 per month for child support.

The trial court found that the couple's house in Irving is community property valued at $330,000 and subject to two mortgages totaling $289,602. It ordered Husband to sell the house and pay all expenses related to the house until it sold. It ordered the net proceeds from the sale of the house to be divided "one-half to [Husband] and one-half to [Wife]." The trial court also (1) awarded 100% of certain accounts to Wife, and (2) awarded to each party 50% of certain accounts and various items of personal property. As a percentage of the total value of the community estate, Wife was awarded approximately 63% and Husband was awarded approximately 37%. The trial court also ordered Husband to pay "Wife's attorneys fees and costs in the amount of $33,680 with said fees to be paid from [two of the accounts] awarded in this Decree to [W]ife."

### ISSUES ON APPEAL

### The Disproportionate Division of the Community Estate

■ In his first issue Husband challenges the disproportionate division of the community estate. Husband argues that the division of 63% to Wife and 37% to Husband was arbitrary, unreasonable, and punitive.

■ When an appellant complains that a trial court improperly divided the parties' property in a divorce proceeding, the ultimate and controlling issue is whether the trial court divided the property in a "just and right manner" pursuant to the Texas Family Code. *See* TEX. FAM.CODE ANN. § 7.001 (West 2006); *see also Prague v. Prague*, 190 S.W.3d 31, 35 (Tex.App.-Dallas 2005, pet. denied). The trial court is afforded wide discretion in dividing the estate of the parties, and we cannot disturb its division on appeal unless a clear abuse of discretion has been shown. *See Vallone v. Vallone*, 644 S.W.2d 455, 460 (Tex.1982). A trial court generally does not abuse its discretion if there is some evidence of a substantive and probative character to support its decision. *Gonzalez v. Gonzalez*, 331 S.W.3d 864, 866 (Tex. App.-Dallas 2011, no pet.); *see also In re E.M.V.*, 312 S.W.3d 288, 291 (Tex.App.-Dallas 2010, no pet.) (noting trial court's discretion is not unlimited and there must be some reasonable basis for unequal division of community estate).

To support his argument Husband relies on two cases in which appellate courts reversed and remanded property divisions: *O'Carolan v. Hopper*, 71 S.W.3d 529 (Tex. App.-Austin 2002, no pet), and *In re Marriage of Taylor*, 992 S.W.2d 616 (Tex.App.-Texarkana 1999, no pet.). The facts in those cases, however, are not comparable to the facts in this case. In *O'Carolan* the husband had significantly greater income and earning power and the wife suffered from a severe brain malformation that impaired her future earning power. Nevertheless, the trial court awarded all of the couple's community property to the husband, and awarded the wife only spousal support, which left the wife "vulnerable to a reduction in the total amount of money received in a way that a fixed division of the community property would not." *O'Carolan*, 71 S.W.3d at 534. Under those

circumstances, the appellate court concluded that the property division was "manifestly unfair" and remanded for a new property division. *Id.* at 534–35. Unlike *O'Carolan,* in this case the trial court did not award 100% of the couple's community property to the spouse who had the higher income and earning power.

In *Taylor* the evidence demonstrated that land worth between $130,000 and $160,000 was the husband's separate property, and the only evidence concerning the value of certain cattle was the wife's testimony that the cattle was worth between $14,000 and $15,000. *Taylor,* 992 S.W.2d at 620–21. Nevertheless, the trial court characterized the land as community property and valued the cattle at $20,000. *Id.* Under those circumstances the appellate court concluded that "the error in characterization of the separate real property as community property, combined with the inaccurate valuing of the cattle, is of such magnitude that it materially affects the division of the community" and remanded for a new property division. *Id.* at 621. Unlike *Taylor,* in this case neither party contends that the trial court mischaracterized property or valued property incorrectly.

In short, *O'Carolan* and *Taylor* do not support a conclusion that the trial court abused its discretion in this case. And based on the entirety of the record before us, we cannot say that the trial court abused its discretion when it awarded Wife a disproportionate share of the community estate. *See, e.g., Golias v. Golias,* 861 S.W.2d 401, 403 (Tex.App.-Beaumont 1993, no writ) (upholding award of 79% of the community estate to wife and citing as examples several other cases upholding disproportionate awards ranging between 80% and 96%).

■ In his first issue Husband also complains that "there is no finding, at all, that specifies what conduct constituted [Husband's] fault in the marriage's failure" and that the trial court "assign[ed] no values to any of the financial accounts that comprised the majority of the value in the subject community estate." Husband, however, did not request any additional or amended findings of fact or conclusions of law. As a result, husband cannot challenge the lack of findings or conclusions of law on appeal. *See, e.g., Smith v. Smith,* 22 S.W.3d 140, 150 (Tex.App.-Houston [14th Dist.] 2000, no pet.) ("[Appellant] had the responsibility of requesting additional findings [of] fact and conclusions of law in connection with the disproportionate division of the community [estate]. By failing to request additional findings and conclusions, [appellant] waived his right to complain on appeal about any error he assumes the court made.") (internal citation omitted).

We resolve Husband's first issue against him.

## The Disposition of the Marital Residence, the Award of Child Support, and the Award of Attorneys' Fees ˙

In his second issue Husband challenges the disposition of the marital residence. More specifically, he argues that the disposition of the marital residence is "unthinkably unfair" because (1) Husband was ordered to pay all of the expenses associated with the house until it sold, (2) "[t]he trial court could not have known at what point the house might finally sell, if ever," and (3) "the order is completely silent as to what happens if there is a loss on the sale." In his third issue Husband challenges the amount of child support ordered. More specifically, relying on section 154.123(b) of the Texas Family Code, he argues that the trial court erred by setting child support at the statutory maximum because Husband "has no access to or possession of the child." In his fourth

issue Husband challenges the award of attorneys' fees. More specifically, he argues that the trial court improperly "increased the amount of attorneys fees" awarded because Wife's attorneys' fees were $33,680 and the trial court "awarded over $83,000 in payment of those fees."[1]

To preserve most issues for appellate review, a party must bring the issue to the trial court's attention by timely request, objection, or motion. *See* TEX.R.APP. P. 33.1. "If the matter is not presented to the trial court, the trial court has no opportunity to rule on the issue or to correct its ruling if it is made in error." *In re Marriage of Lendman,* 170 S.W.3d 894, 898 (Tex.App.-Texarkana 2005, no pet.) (citing *Lewis v. Tex. Employers Ins. Ass'n,* 151 Tex. 95, 246 S.W.2d 599, 600 (1952)); *see also Powell v. Powell,* 604 S.W.2d 491, 493 (Tex.Civ.App.-Dallas 1980, no writ) ("[t]he orderly administration of justice requires that issues and objections be raised in the trial court so that justice may be done there rather than to permit a litigant to wait until after the trial court has acted adversely and then complain for the first time on appeal"); *In re D.W.,* 249 S.W.3d 625, 643–44 (Tex.App.-Fort Worth), *pet. denied,* 260 S.W.3d 462 (Tex.2008) (per curiam) (noting rules of civil and appellate procedure "assure that parties must bring every complaint of error to the attention of the trial court in a timely manner, and they provide the trial court ample opportunity at every step of the trial proceedings to cure its own errors and grant new trials when needed, so as to eliminate unnecessary appeals").

In this case Husband did not raise any complaints in the trial court regarding the disposition of the marital residence, the award of child support, or the award of attorneys' fees. He did not object when the trial court orally rendered its judgment at the conclusion of the hearing, and he did not raise any of these complaints in a motion for new trial after the trial court signed the final decree of divorce. Because he did not present any of these complaints to the trial court, he has not preserved these issues for appellate review. *See* TEX.R.APP. P. 33.1; *see also In re J.S.H.,* No. 01–08–00563–CV, 2010 WL 987247, at *1 (Tex.App.-Houston [1st Dist.] Mar. 18, 2010, no pet.) (mem. op.) ("[Appellant] did not object at trial to the amount of child support ordered by the trial court. This issue, therefore, is not preserved for appeal."); *Swaab v. Swaab,* 282 S.W.3d 519, 527 (Tex.App.-Houston [14th Dist.] 2008, pet. dism'd w.o.j.) (appellant's complaint about provision in divorce decree ordering him to assume 100% of federal income tax liability that arose during marriage not preserved for appellate review because he "did not complain to the trial court about this provision in the divorce decree").

We resolve Husband's second, third, and fourth issues against him.

## The Order Granting Wife's Motion for New Trial

■ In his fifth issue Husband challenges the trial court's order granting Wife's motion for new trial. More specifically, Husband cites the following statement made by his counsel at the beginning of the final hearing:

---

1. Although Husband did not preserve his fourth issue for appellate review, we note that we disagree with Husband's characterization of the attorneys' fees award. The trial court ordered Husband to pay Wife's attorneys' fees in the amount of $33,680, and ordered that

the fees were to be paid from two of the bank accounts awarded to Wife. The fact that the balances in those accounts exceeded Wife's attorneys' fees did not increase the amount of attorneys' fees awarded to Wife.

Your Honor, by way of just a very, very brief opening: If you'll remember in this case, originally the—when we had our first hearing on the motion for new trial, this is a case that Your Honor was, at that point in time, prone to deny the motion. However, when you said that you were going to deny the motion [Wife's counsel] very astutely pointed out to the Court, and correctly I'll add, that the Court would lose its plenary jurisdiction in the middle of next week. You indicated that you were very interested in getting a paternity test done. So I remind the Court of that just for the purpose of kind of putting things in context.

And based solely on that statement, Husband argues that "the trial court's granting of [Wife's] [m]otion for [n]ew trial, just for the purpose of retaining jurisdiction, was improper." [2]  In response, Wife argues that the trial court's order granting her motion for new trial is not reviewable on appeal. We agree with Wife.

■ "Except in very limited circumstances, an order granting a motion for new trial rendered within the period of the trial court's plenary power is not reviewable on appeal." *Wilkins v. Methodist Health Care Sys.*, 160 S.W.3d 559, 563 (Tex.2005); *see also In re Columbia Med. Ctr. of Las Colinas, Subsidiary, L.P.*, 290 S.W.3d 204, 208 (Tex.2009) ("[O]ur decisions preclude, for the most part, appellate review of orders granting new trials."). As the supreme court recently explained, its "prior decisions indicate that only in two instances have new trial orders rendered during the time a trial court has plenary power been reviewable by an appellate court: when the trial court's order was void and when the trial court errone-

ously concluded that the jury's answers to special issues were irreconcilably in conflict." *In re Columbia Med. Ctr.*, 290 S.W.3d at 209. This case did not involve a jury trial and Husband does not claim that the order is void. As a result, we conclude that the trial court's order granting Wife's motion for new trial is not reviewable on appeal. *See id.* We resolve Husband's fifth issue against him.

**The Exclusion of Evidence**

■ In his sixth issue Husband argues that the trial court erred when it (1) "excluded testimony regarding [Husband's] efforts to locate [Wife] after they had become estranged," and (2) "refused to allow [Husband] to play an audio recording in which [Wife] admits that refusing to communicate with [Husband] for a year and a half was a mistake on her part." Husband, however, does not cite any authority to support his argument or otherwise explain why the evidence was admissible. As a result, Husband's sixth issue is not adequately briefed. *See* Tex.R.App. P. 38.1(i) (brief must contain "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"). The failure to adequately brief an issue waives that issue on appeal. *Huey v. Huey*, 200 S.W.3d 851, 854 (Tex.App.-Dallas 2006, no pet.). We resolve Husband's sixth issue against him.

CONCLUSION

We resolve Husband's issues against him and affirm the final decree of divorce.

---

**2.** The order granting Wife's motion for new trial states that the motion was granted "in

the interest of justice and fairness."