

## NUMBER 13-11-00459-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

### IN THE INTEREST OF I.J.M., A CHILD

### On appeal from the 85th District Court
### of Brazos County, Texas.

## MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Garza and Vela
### Memorandum Opinion by Justice Vela

This is an appeal from the trial court's order denying appellant's motion to modify the conservatorship provisions of a divorce decree and granting appellee, appellant's former husband's, cross-motion to modify the same decree.[1] By six issues, appellant claims the trial court erred by: (1) excluding evidence of appellee's psychological condition; (2) naming appellee as the parent with the right to determine the residence of

---

[1] This case is before this Court on transfer from the Tenth Court of Appeals in Waco, Texas pursuant to an order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2005).

the child because he failed to establish a material and substantial change in circumstances; (3) granting appellee's motion to modify because he failed to establish that the modification was in the child's best interest; (4) denying appellant's motion to lift the geographical restriction on her right to determine the residence of the child; (5) modifying the decree to allow appellee to determine the residence of the child without affording appellant the opportunity to re-establish her residence within the geographical restriction; and (6) awarding appellee attorney's fees because there was no finding that the fees were reasonable or necessary. We affirm.

## I. PROCEDURAL BACKGROUND

The parties to this appeal are appellant, L.L., the mother of I.J.M., and appellee E.M., I.J.M.'s father. Mother and Father met while both were doctoral candidates. Three months after the child was born, the parties separated. Mother filed a petition for divorce, stating that the marriage had become insupportable. In October 2009, the parties signed a mediated settlement agreement in which they agreed that Mother would have the exclusive right to establish the primary residence of the child in Brazos or Travis counties or any county between the two.

On January 21, 2010, the couple divorced; the final decree was based upon the mediated settlement agreement. The final decree incorporated the geographical restriction. Less than a year later, Mother moved to modify the decree to give her the exclusive right to designate the child's primary residence without regard to a geographical restriction. Father also sought to modify the decree to allow him the exclusive right to designate the primary residence of the child.

2

In October 2010, Mother sought a temporary order to allow her to move wherever she was able to find employment. Father sought a temporary injunction to prevent mother from removing the child from the geographic area that had been agreed to. In December, an associate judge entered a temporary order that lifted the geographic restriction and allowed Mother to relocate to Illinois with the child. Father filed a request for a de novo hearing before the trial court, who signed a temporary order on January 27, 2011, which was consistent with the associate judge's order. A trial was held on April 4, 2011, wherein the trial court denied Mother's motion to modify and granted Father's motion to modify, giving him the exclusive right to establish the child's residence. The trial court filed findings of fact and conclusions of law. Mother timely perfected her appeal.

## II. ANALYSIS

## A. Exclusion of Evidence

By Mother's first issue, she argues that the trial court erred in excluding evidence with respect to her claim that Father had received an alleged diagnosis of antisocial personality disorder. At trial, counsel for Mother asked Father about his alleged diagnosis of antisocial personality disorder that had allegedly occurred before the mediation. Father's counsel objected, and the court sustained the objection.

### 1. Standard of Review and Applicable Law

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Serv. Corp. Int'l v. Guerra*, 348 S.W.3d 221, 234 (Tex. 2011); *In re J.P.B.*, 180 S.W.3d 570, 575 (Tex. 2005). A court abuses its discretion when it acts without

3

reference to guiding rules and principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241 (Tex. 1985). To preserve error in the exclusion of evidence, a party must: (1) attempt during the evidentiary portion of the trial to introduce the evidence; (2) if there is an objection, specify the purpose for which the evidence is offered and give the trial court reasons why the evidence is admissible; (3) obtain a ruling from the court; and (4) if the court rules the evidence inadmissible, make a record, through a bill of exceptions, of the precise evidence the party desires admitted. *Ulogo v. Villanueva*, 177 S.W.3d 496, 501–02 (Tex. App.—Houston [1st Dist.] 2005, no pet.); *see* TEX. R. EVID. 103(a)(2); TEX. R. APP. P. 33.1(a)(1)(B).

### 2. Discussion

After Father objected to the exclusion of evidence and the objection was sustained, no further offer of proof was made by Mother. Because she failed to make an offer of proof, her argument is waived under the relevant case law. Mother argues that the substance of the evidence was clear from the record itself and was relevant and that if her complaint "had been to the exclusion of evidence of the specific effect of the diagnosis on [father], an offer of proof would have been proper." We disagree. The trial court could reasonably have concluded that the evidence with respect to Father's psychological condition was not relevant because it was something that had been dealt with previously. Regardless, if Mother thought it relevant and important to the issues raised in the modification hearing, she should have made an offer of proof so the excluded evidence could be assessed on appeal. Without it, we cannot determine if the trial court actually erred. We overrule issue one.

4

**B. Material and Substantial Change in Circumstances and Best Interest**

By issues two and three, Mother claims the trial court erred in granting Father's motion because he failed to establish a material and substantial change in circumstances and failed to show that the modification was in the child's best interest. By issue four, she argues that the trial court erred in denying her motion to lift the geographical restriction on her right to determine the residence of the child. Mother also complains that Father's supporting affidavit did not state what facts showed a material and substantial change in circumstances. Rather, she argues that only at trial did Father identify her move to Illinois as a significant and substantial change in circumstances. Mother also argues that the findings of fact state that "there has been a material and substantial change," without identifying the change entailed.

**1. Standard of Review and Applicable Law**

We review a trial court's decision in a case concerning a modification of conservatorship under an abuse of discretion standard. *In re M.A.M.*, 346 S.W.3d 10, 13 (Tex. App.—Dallas 2011, pet. denied); *Coleman v. Coleman*, 109 S.W.3d 108, 110 (Tex. App.—Austin 2003, no pet.). A trial court abuses its discretion if it acts arbitrarily or without reference to guiding principles. *Downer*, 701 S.W.2d at 241–42; *Coleman*, 109 S.W.3d at 110. We may not reverse for abuse of discretion merely because we disagree with a decision of the trial court. *Downer*, 701 S.W.2d at 242.

The traditional sufficiency standard of review overlaps with the abuse of discretion standard in family law cases; thus, legal and factual sufficiency are not independent grounds of error but are relevant factors in assessing whether the trial court abused its

5

discretion. *In re A.B.P.,* 291 S.W.3d 91, 95 (Tex. App.—Dallas 2009, no pet.). This standard of review has been distilled into a two-pronged inquiry: (1) whether the trial court had sufficient information upon which to exercise its discretion; and (2) whether the trial court erred in its application of discretion. *See Vardilos v. Vardilos*, 219 S.W.3d 920, 921 (Tex. App.—Dallas 2007, no pet.); *Echols v. Olivarez*, 85 S.W.3d 475, 477–78 (Tex. App.—Austin 2002, no pet.); *Lindsey v. Lindsey*, 965 S.W.2d 589, 592 (Tex. App.—El Paso 1998, no pet.).

According to this inquiry, the traditional sufficiency review comes into play with regard to the first inquiry. *A.B.P.,* 291 S.W.3d at 95; *Moroch v. Collins*, 174 S.W.3d 849, 857 (Tex. App.—Dallas 2005, pet. denied). *Echols*, 85 S.W.3d at 478. An appellate court then must determine whether, based on the elicited evidence, the trial court made a reasonable decision. *Moroch,* 174 S.W.3d at 857. If some evidence of a substantive and probative character exists to support the trial court's decision, there is no abuse of discretion. *In re C.C.J.*, 244 S.W.3d 911, 917 (Tex. App.—Dallas 2008, no pet.).

The trial court, as the fact finder, is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *See City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005).

Section 156.101 of the Texas Family Code provides that a court may modify the terms and conditions of a joint managing conservatorship when the circumstances of the child or one or both of the conservators has materially and substantially changed since the prior order, and the modification would be a positive improvement for and is in the best interest of the child. TEX. FAM. CODE ANN. § 156.101 (West Supp. 2011). In reviewing

6

determinations regarding modification of residency restrictions to permit a custodial parent's relocation, we look to the public policy of the legislature as set forth in the family code for custody issues and the guidelines developed based upon that policy. *In re Cooper*, 333 S.W.3d 656, 660 (Tex. App.—Dallas 2009, orig. proceeding); *see Lenz v. Lenz*, 79 S.W.3d 10, 14 (Tex. 2002). Separated and divorced parents are encouraged to share in both the rights and duties of raising a child. *Cooper,* 333 S.W.3d at 660. The decision to determine if relocation is permitted is fact-driven. *Id.*; *Lenz*, 79 S.W.3d at 18–19.

Many factors can bear on the determination of a child's best interest in the context of residency restrictions and relocation, including the general factors relevant to the best interest of a child, such as (1) the child's desires; (2) the child's current and future physical and emotional needs; (3) any physical or emotional danger to the child in the present or future; (4) the parental abilities of the individuals involved; (5) the programs available to those individuals to promote the child's best interest; (6) the plans for the child by these individuals; (7) the stability of the home; (8) acts or omissions by a parent tending to show that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *In re A.P.P.,* 74 S.W.3d 570, 575 (Tex. App.—Corpus Christi 2002, no pet.). These considerations are neither exhaustive nor do all such considerations have to be proved as a condition precedent to a best interest determination. *In re C.H.*, 89 S.W.3d 17, 27–28 (Tex. 2002) (noting that every "best interest" factor need not be found).

In addition, as recognized by the supreme court in *Lenz* "[t]he Legislature has provided a basic framework upon which we may build guidelines for reviewing a modification that removes a residency restriction for purposes of relocation." 79 S.W.3d at 14. That framework, outlined in section 153.001 of the Texas Family Code, provides that the public policy of Texas is to:

(1)     assure that children will have frequent and continuing contact with parents who have shown the ability to act in the best interest of the child;

(2)     provide a safe, stable, and nonviolent environment for the child; and

(3)     encourage parents to share in the rights and duties of raising their child after the parents have separated or dissolved their marriage.

TEX. FAM. CODE ANN. § 153.001(a) (West 2008); *Lenz*, 79 S.W.3d at 14.

## 2. Waiver

The trial court made very brief fact findings and conclusions of law in support of its decision. It found that there had been a material and substantial change as to warrant a modification of the prior orders, modification was in the best interest of the child, and it was in the child's best interest for Mother and Father to be appointed joint managing conservators with Father having the exclusive right to designate the child's primary residence. Although Mother complains about the findings on appeal, at no time did she request additional or amended findings of fact. As a result, she cannot challenge the lack of findings or conclusions of law on appeal. *See Pagare v. Pagare*, 344 S.W.3d 575, 581 (Tex. App.—Dallas 2011, pet. denied); *see also Smith v. Smith*, 22 S.W.3d 140, 150 (Tex. App.—Houston [14th Dist.] 2000, no pet.) ("[Appellant] had the responsibility of requesting additional findings [of] fact and conclusions of law in connection with the

8

disproportionate division of the community [estate]. By failing to request additional findings and conclusions, [appellant] waived his right to complain on appeal about any error he assumes the court made.") (internal citations omitted). Mother has waived the right to complain about fact findings that were never requested.

### 3. The Evidence

The substance of Mother's second and third issues centers upon what she argues is a lack of evidence to support the trial court's decision. In the fourth issue, she argues that her motion should have been granted.

The trial court had before it seriously conflicting evidence. Generally, the evidence was that both parents are loving parents who simply do not get along with each other. Our review of this matter is one in which we are looking at a "cold" record, unlike the trial court who could observe the demeanor, expressions, and sincerity of the witnesses who came before it.

Mother testified that when she finished her Ph.D. in Chemistry at Texas A&M University, she began looking for employment. She obtained three interviews at a job fair in Boston and only Nalco offered her a position. The position was in Illinois, which happened to be close to where her mother resides. Mother indicated that she probably could have gotten a post doctoral position at Texas A&M University, but it would have been for significantly less pay. She agreed that if she could have found a similar position in Texas to the one she acquired in Illinois, it "would have made life a lot easier." She described her position at Nalco as a senior chemist. She makes $83,500 a year, has health insurance, a 401k, and an on-premises daycare. She described I.J.M. as having

9

friends in Illinois and being very happy. Mother testified that she had purchased a townhome and has good neighbors. Mother's mother and grandfather live only 35 minutes from her. Mother indicated that her family was from the Ukraine and it is important to her that the child learn about her heritage. Mother stated that she is dating a man employed by Brazos County Sheriff's Department and later testimony established that they planned to be married and he planned to join her in Illinois.

Mother further testified that none of Father's family members ever inquired about the child to her. They never sent cards or gifts to the child at Mother's address. She also stated that she and Father do not have a good relationship. She gave examples of how she thought he had been inflexible and uncooperative with respect to visitation. Mother said that Father would make remarks when they were exchanging the child, such as: "here's the woman that picks you up." There was fist-waving and Father always videotapes the exchanges. Father was late returning the child after one of his visits in Illinois. Mother stated that Father and his new wife showed up at the child's daycare in Illinois because they wanted to see it. According to Mother's testimony, she would not seek additional child support from Father because he has to travel to see the child.

On cross examination, Mother agreed that she applied for only one position in Texas. She disagreed that there were twenty eight senior chemist positions available in Texas for which she would qualify. Mother testified that her home had no backyard, and that the weather is cold and treacherous. Mother agreed that she did not facilitate a relationship with Father's family after the divorce. She denied that she moved to Illinois in order to alienate Father from the child. She agreed that during the week, the child

10

spends more time in daycare than at home. Mother testified that when she flies to Texas for the visitations, she flies to Houston, rather than Austin, where Father resides, because it is cheaper. Mother agreed that she has not offered Father any extra visitation.

David Drosche, Mother's boyfriend, testified that he has been to Mother's home in Illinois and it is very nice. The child has her own room and the daycare was one of the best he had ever seen. He has observed that Mother's family is very caring. He also has a good relationship with the child. He noted that the child seemed as happy in Illinois as she had been in Texas. According to Drosche, Father makes snide comments to Mother at times when they were exchanging the child. He said he had not observed anything which would lead him to believe that the child was not attached to her father.

Father testified that he will not be able to take the child to school or daycare if she continues to reside in Illinois. He indicated that while the parties were attempting to use Skype for weekday visitation, it was not working out. He believed that Mother moved for her own best interest, not that of the child. Father believed the move had impacted his relationship with the child. He stated that he was in the same profession as Mother, and had not had trouble finding a job in Texas. The record reflected, however, that his salary was much less than Mother's. According to Father, the child has a good relationship with his extended family. Several photographs were introduced depicting his family spending time with the child. Father did not think it was in the child's best interest to be that far away from her extended family. He said that the child has her own room at the home he shares with his current wife, and if he was awarded custody, they would only have the child in daycare on Tuesdays, Wednesdays and Thursdays, because his wife has her

11

own business. This would give Mother additional time for visitation. He described their home as having a large back yard and there are parks nearby.

Father's wife testified that they had found age-appropriate art and music classes for the child if Father was awarded custody. They found a recommended preschool that she could attend. Father's wife testified, contrary to Mother's earlier testimony, that Mother was responsible for the bad behavior that occurred during the transfer process.

The evidence presented was conflicting. The trial court ultimately concluded that the decision to determine residency should be with Father. At the end of the hearing, the trial court stated that Mother "can't dictate by [her] choice the relationship between the parent and a child." There was testimony that the child was happy in Illinois and was well cared for. She has a loving family there as well as in Texas. But, the fact remains that Mother removed the child a great distance from her Father. There was testimony that there is a strong relationship between Father and child. There was testimony that if Father was allowed to choose residency, that the child would only be in daycare three days a week and the possibilities for Mother to have longer visits with the child existed. Mother makes more money than Father, but Father introduced a budget into evidence showing that his expenses were less, so he had more unbudgeted money available at the end of each month. Father and his wife had looked into pre-schools and numerous activities for the child to engage in.

We conclude that, under the particular facts of this case, that relocation from Texas to Illinois is a material and substantial change in circumstances. *See In re W.C.B.,* 337 S.W.3d 510, 516 (Tex. App.—Dallas 2011, no pet.). We further conclude that the trial

12

court's decision was reasonable, based on the evidence—a decision that was neither arbitrary nor unreasonable nor without reference to any guiding rules and principles. *See Downer*, 701 S.W.2d at 241. The trial court heard testimony supporting many factors, identified above, that concerned the child's best interest with respect to residency restrictions and relocation. Because it is apparent from our review that the trial court did not act arbitrarily, but rather acted reasonably and with reference to guiding rules and principles, we conclude that the trial court did not abuse its discretion when it ordered the modification. *See Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982). *In re C.R.O.*, 96 S.W.3d at 442, 446 (Tex. App.—Amarillo 2002, pet. denied). We overrule issues two, three, and four.

### C. Right to Re-establish Residency

By issue five, appellant urges that the trial court should have allowed her the opportunity to reestablish the child's residence within the geographical restriction. She cites *In re D.M.D.* as authority for her argument. *See* No. 05-07-01045-CV, 2009 WL 280465 (Tex. App.—Dallas, Feb. 6, 2009, no pet.) (mem. op.). However, the court in *D.M.D.* was not asked to consider the question of whether a trial court is required to afford a custodial parent the opportunity to establish the primary residence of the child within the geographical restriction before awarding the non-custodial parent the right to determine the primary residence. Appellant cites no other authority for her argument and we are not persuaded by the authority cited. We overrule issue five.

**D. Attorney's Fees**

By issue six, Mother argues that the trial court erred in awarding attorney's fees to Father because there was no finding that the fees were reasonable or necessary or that payment was "necessary" for the child. The record reflects that Mother stipulated to the reasonableness and necessity of Father's attorney's fees.

Stipulations of fact are binding on the parties, the trial court, and the reviewing court. *Panther Creek Ventures, Ltd. v. Collin Cent. Appraisal Dist.*, 234 S.W.3d 809, 811 (Tex. App.—Dallas 2007, pet. denied). It constitutes a binding contract between the parties. *ExxonMobil Corp. v. Valence Operating Co.*, 174 S.W.3d 303, 311 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). A stipulation may be used to limit or exclude the issues to be tried and may obviate the need for proof on a litigable issue. *Id.*

Here, Father's counsel's case ledger was admitted into evidence, showing fees and expenses of $15,533.25, the amount awarded by the trial court. Counsel for Mother stipulated to the reasonableness and necessity of those fees before the exhibit was admitted. Because of the clarity of the stipulation, we agree that it was binding upon this Court as it was upon the trial court. We overrule issue six.

### III. CONCLUSION

Having overruled all of appellant's issues, we affirm the judgment of the trial court.


ROSE VELA
Justice

Delivered and filed the
5th day of April, 2012.

14