In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

**NO. 09-12-00331-CV**
_____

**IN THE INTEREST OF R.A.M.**

**On Appeal from the 279th District Court**
**Jefferson County, Texas**
**Trial Cause No. F-204,353-C**

**MEMORANDUM OPINION**

C.M. filed a petition to modify the parent-child relationship, in which he sought extended visitation with R.A.M. K.M. filed a counter-petition seeking increased child support and reimbursement of health insurance costs. The trial court ordered C.M. to pay medical child support, but did not extend visitation or increase child support. In fifteen appellate issues, C.M. challenges the trial court's ruling. We affirm the trial court's order.

Factual Background

The trial court ordered the parties to pick up and return R.A.M. at the Nederland Police Department. C.M. received two hours of visitation on Thursdays and six hours of visitation every first, third, and fifth Sunday. At the modification hearing, K.M. testified

1

that C.M. is often late for exchanges. Officer Cody Corkran testified that the parties once became involved in a disturbance because K.M.'s mother asked C.M. why he was late. Officer Nicky Matt testified that he became involved in a heated discussion with C.M. when he advised C.M. that exchanges needed to occur behind the police station after hours. Matt testified that this discussion occurred in R.A.M.'s presence. C.M. subsequently filed a complaint against Matt.

C.M. testified that he drives over an hour for exchanges. On Sundays, he drives R.A.M. to his home in Kirbyville, where R.A.M. has toys, a bedroom, and a bed. He testified that his wife, daughter, in-laws, and father often attend visitation. On Thursdays, R.A.M. and C.M. go to the park. C.M. testified that he sometimes runs late because R.A.M. cries and does not want to leave the park. He testified that he contacts K.M. when he is running late.

K.M. testified that R.A.M. is happy with the current visitation schedule. She testified that C.M. is "controlling" and is behind in child support. Colleen Christie, a parenting facilitator, testified that R.A.M. seemed well adjusted and interacted well with C.M., his step-mother, and his step-sister. Christie testified that it would be best for R.A.M. if the parties gradually transitioned into standard possession.

Nicole Provenceo, R.A.M.'s pre-school teacher, testified that R.A.M. is properly dressed, fed, happy, and healthy. Provenceo, however, testified that she had to seek a no trespass warning against C.M. after C.M. filed a complaint of abuse against the pre-

school. C.M. testified that R.A.M. had black eyes. Provenceo, however, testified that this allegation was false. She testified that R.A.M. was involved in a fight with another child over a toy and that C.M. blew the incident out of proportion.

K.M. testified that C.M. mentally abuses R.A.M. She explained that C.M. took issue with R.A.M.'s nickname for K.M.'s mother, told R.A.M. that people of other races are bad and that police officers shoot people, and once upset R.A.M. by leaving a dirty handprint on R.A.M.'s jacket. K.M. explained that she lives with her parents and that, after visiting C.M., R.A.M. asks why he does not have a home or why K.M.'s step-father is not his "paw-paw." K.M. also testified that R.A.M. sometimes wets the bed after visits with C.M. C.M. denied telling R.A.M. that K.M.'s parents' home is not his or that people of other races are bad. C.M. admitted accidentally wiping cheese on R.A.M.'s jacket and laughing because R.A.M. "freak[s] out" when he is dirty, but he testified that he apologized to R.A.M.

K.M. also opined that C.M. cannot properly care for R.A.M. She described an instance when she cancelled visitation because R.A.M. had strep throat and offered to reschedule, but C.M. refused to reschedule. She testified that C.M. asked for a wellness check and police came to her home. She testified to instances when R.A.M. was not properly clothed for the weather, including an instance when C.M. allowed R.A.M. to ride a four-wheeler in the rain even though C.M. knew that R.A.M. had been receiving breathing treatments for upper respiratory issues. C.M. testified that he would never

3

harm his children and K.M. agreed that C.M. would not physically harm R.A.M. C.M. explained that he wanted the trial court to gradually extend visitation to include overnight visits.

In findings of fact and conclusions of law, the trial court found that there had been a material and substantial change in circumstances and that it was in R.A.M.'s best interest that exchanges be conducted at the Jefferson County Sheriff's Department and medical child support be set at $199.00 per month. The trial court declined to extend visitation or increase child support.

Modification Issues

In issues one and two, C.M. contends that overnight visitation was in R.A.M.'s best interest. A trial court may modify a possession order if modification would be in the child's best interest and the circumstances have materially and substantially changed. Tex. Fam. Code Ann. § 156.101(a)(1) (West Supp. 2012). The trial court may consider the standard possession guidelines, the child's age, developmental status, circumstances, needs, and best interest, the conservators' circumstances, and any other relevant factor. *Id*. § 153.256 (West 2008). We review a trial court's modification order for abuse of discretion. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982).

R.A.M. was five years old at the time of the hearing. The trial court heard K.M.'s testimony that R.A.M. is happy with the current visitation arrangement and C.M.'s testimony that R.A.M. cries when visitation ends. The trial court heard testimony that

4

R.A.M. has belongings at the Kirbyville home, is well adjusted, interacts well with C.M. and his family, and is properly dressed, fed, happy, and healthy. The trial court also heard K.M.'s testimony that C.M. failed to properly clothe R.A.M. on occasion, refused to cooperate with K.M. when R.A.M. became sick, and ignored K.M.'s advice to keep R.A.M. out of the rain for health reasons. According to the record, R.A.M. has been late returning R.A.M. to K.M., engaged in disagreements with K.M.'s mother and Officer Matt, failed to comply with the police department's procedure to meet behind the station after hours, and lodged allegations against R.A.M.'s pre-school that Provenceo claimed were untrue. K.M. was not in favor of overnight visits, but C.M. favored gradual transition to standard possession.

The trial court has wide latitude when determining a child's best interests. *Id.* As sole judge of the weight and credibility of the evidence, the trial court could reasonably conclude that excluding overnight visitation was in R.A.M.'s best interest. *See In the Interest of Q.D.T.,* No. 14-09-00696-CV, 2010 Tex. App. LEXIS 8813, at **23-24 (Tex. App.—Houston [14th Dist.] Nov. 4, 2010, no pet.) (mem. op.) (A trial court may find that it is in the child's best interest that a parent does not have overnight visitation.). From the record before us, we cannot say that the trial court abused its discretion by declining to modify possession to include overnight visitation. We overrule issues one and two.

In issue eleven, C.M. maintains that the trial court erred by ordering that exchanges occur in a protective setting. A trial court may devise a possession order that

5

is suitable for the custody situation at issue. *E.C. v. Graydon*, 28 S.W.3d 825, 829-30 (Tex. App.—Corpus Christi 2000, no pet.). Given the parties' history, the trial court could have determined that conducting exchanges at a law enforcement facility was in R.A.M.'s best interest and was suitable for the parties' particular custody situation. *See id.*; *see also In re B.A.W.*, 311 S.W.3d 544, 551 (Tex. App.—El Paso 2009, no pet.) (Because of the tension and animosity between the parties, the trial court could have determined that a "neutral exchange site" was in the child's best interest.). We overrule issue eleven.

In issue thirteen, C.M. challenges the trial court's award of medical child support. A trial court shall order medical child support when it determines that medical child support must be established, modified, or clarified. Tex. Fam. Code Ann. § 154.181(a)(2) (West Supp. 2012). K.M. testified that R.A.M.'s health insurance costs $199 per month. On appeal, C.M. contends that K.M. failed to produce a certified copy of insurance and that $199 is inaccurate for only one child. However, C.M. did not object to K.M.'s testimony regarding the cost of R.A.M.'s insurance. *See* Tex. R. App. P. 33.1(a). C.M. also contends that the trial court failed to consider certain factors when assessing medical child support, but C.M. did not object to the trial court's award of medical child support. Under these circumstances, issue thirteen has not been preserved for appellate review and is overruled. *See id.*; *see also Pagare v. Pagare*, 344 S.W.3d 575, 582 (Tex. App.—Dallas 2011, pet. denied) (Husband failed to preserve his

complaint regarding a child support award because he did not first present his complaint to the trial court.).

Hearsay

In issue four, C.M. complains that the trial court overruled his hearsay objection to K.M.'s testimony regarding why she believed C.M. had mentally abused R.A.M. In a bench trial, the trial court has the responsibility to assess the witnesses' credibility, logically evaluate the evidence, rationally resolve factual disputes, and correctly apply the law to the facts. *In re K.L.*, 91 S.W.3d 1, 17 (Tex. App.—Fort Worth 2002, no pet.). In discharging this responsibility, the trial court could have decided to disregard the testimony. Moreover, the trial court had before it other evidence by which it could conclude that overnight visitation was not in R.A.M.'s best interest. *See Gillespie*, 644 S.W.2d at 450. Assuming, without deciding, that K.M.'s testimony amounted to inadmissible hearsay evidence, we cannot say that any error probably caused the rendition of an improper judgment. *See* Tex. R. App. P. 44.1(a)(1); *see also Gillespie*, 644 S.W.2d at 450. We overrule issue four.

Remaining Contentions

In C.M.'s remaining issues, he contends that the trial court restricted his ability to seek modification, committed harmful evidentiary errors, changed the exchange location without a request from the parties, violated R.A.M.'s due process rights, and created a situation that will lead to continued litigation. These complaints, however, are not

supported by clear and concise arguments or citations to appropriate authorities. *See* Tex. R. App. P. 38.1(i). Because issues three, five, six, seven, eight, nine, ten, twelve, fourteen, and fifteen have not been properly briefed, they are overruled. *See id.; see also Drum v. Calhoun*, 299 S.W.3d 360, 364 (Tex. App.—Dallas 2009, pet. denied) (Although we construe *pro se* briefs liberally, a *pro se* party must still follow the same rules as litigants represented by a licensed attorney.). We affirm the trial court's judgment.

        AFFIRMED.

_____
STEVE McKEITHEN
Chief Justice

Submitted on December 18, 2012
Opinion Delivered January 24, 2013
Before McKeithen, C.J., Kreger and Horton, JJ.