In re Tiffany Sims COOPER, Relator.

No. 05–09–00995–CV.

Court of Appeals of Texas, Dallas.

Nov. 12, 2009.

Hugh E. Hackney, Greenberg Taurig, LLP, Christopher M. Lavigne, Locke Liddell & Sapp LLP, Dallas, TX, for Relator.

William Bonner Shelton, Looper, Reed, and McGraw, Dallas, TX, for Real Party in Interest.

Before Justices BRIDGES, RICHTER, and LANG.

## OPINION

Opinion by Justice BRIDGES.

In this original mandamus proceeding, Tiffany Sims Cooper contends the trial judge abused the trial judge's discretion in entering an August 19, 2009 order that overturned an associate judge's report and imposed a residency restriction requiring relator to relocate her children to Dallas County or a contiguous county pending a trial scheduled for December 2009. We conclude the trial judge abused her discretion and that relator has no adequate remedy at law. Accordingly, we conditionally grant mandamus relief.

Relator married Joshua Ryan Cooper in 2003. At the time of the marriage, relator was a resident physician at Parkland Hospital in Dallas while respondent was a dental student in San Antonio. When respondent finished dental school, he moved to Dallas to join relator. Relator and respondent had two children together. After the birth of her second child, relator dropped out of her residency program to become the children's full time care giver. The couple separated in 2008, and relator moved with the children to South Carolina to finish her residency in obstetrics and gynecology (OB/GYN). On August 29, 2008, relator filed for divorce. On October 31, 2008, the trial court entered Agreed Temporary Orders providing, in relevant part, that the children "shall reside with [relator] in Greenville, South Carolina, while she is completing her residency program, which is expected to last through June 2009." The Agreed Temporary Orders expressly stated that the children would be considered residents of Dallas County, Texas, and the question of their permanent domicile was left open for later resolution. While the Agreed Temporary Orders were in place, respondent made twelve trips to South Carolina to visit the children.

As relator's residency program came to an end, she made efforts to find permanent employment as an OB/GYN specialist. Relator testified she looked at Dallas "first and foremost." She testified that she conducted a thorough job search in the Dallas area, applying for about fifteen positions that would allow her to have a reasonable call schedule so as to be with her children, but she was unable to secure employment. During cross-examination, relator indicated that the documents she produced showed she applied for "seven to eight" positions in the Dallas area. Relator further admitted that there were at least as many jobs, and perhaps twice as many, that she did not apply for because they required unfavorable call schedules. Relator described the job market for OB/GYN physicians in the Dallas market as "saturated" because the area has three training programs. Relator testified that she was offered only one job-in Gastonia, North Carolina. She accepted the sole job offer, signed a contract, and moved to North Carolina where she is employed presently and owns a home.

After receiving the offer in North Carolina, relator applied to the trial court for a modification of the Agreed Temporary Orders to allow her to move to North Carolina with the children. On April 16, 2009, the associate judge to whom the motion to modify was assigned issued a report granting the motion and permitting relator to temporarily designate Gaston County, North Carolina as the children's residence pending trial of the divorce case. Respondent appealed the associate judge's order requesting the trial judge's de novo review.

The trial court conducted the de novo hearing on June 15 and July 8, 2009. During the hearing, the trial court made repeated comments indicating skepticism about the scope of relator's efforts to secure employment in Dallas. After hearing evidence, the trial court made the following oral ruling:

> To clarify what the Court—what I believe that the standard is, it's weighing the parent's need to move regarding her employment versus the effect that the move—that the change is domicile will have on the children's relationship with their father.
>
> And the Court finds that it is significantly—significantly impairs the relationship of the ability for the children to have a relationship especially at the ages two and four at this time.
>
> So I am going to order you to—I'm going to restrict the children's domicile to Dallas and contiguous counties. It is just too early in the game plan. I understand the significant impact that has on you. But it's a decision that really determines how much the father is going to be involved in their lives. And I do think that the father going to South Carolina and visiting with them in a hotel for a weekend is not a natural relationship for the children to have with their father.
>
> Based on the testimony, you offered the search that you did through the—you offered the searches that you did, but I have no idea whether you hired a head hunter, what extreme efforts you made in coming back to this area. It wasn't as if Dallas was just one of the choices. Dallas, based on the fact that this is where you were married and resided together and the father lives here, that should have been the priority. I mean by leaps and bounds.
>
> So I'll order that the children are back in the Dallas area by October 1st. I will order at that time that the father pay an additional $2,000 per month for four months until you have time to get yourself reestablished here.

Relator then filed this mandamus proceeding to challenge the trial court's August 19, 2009 written order memorializing the trial court's ruling. We requested a response from respondent and after reviewing the response, we stayed the trial court's temporary orders.

Mandamus relief is available when the trial judge abuses her discretion and there is no adequate remedy at law. *In re Prudential Ins. Co. of Am.,* 148 S.W.3d 124, 135–36 (Tex.2004) (orig. proceeding). A trial judge has no discretion in determining what the law is or in applying the law to the facts, and a clear failure by the court to correctly analyze or apply the law will constitute an abuse of discretion. *See Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992) (orig. proceeding).

In determining whether a party has an adequate remedy by appeal, we consider whether the benefits outweigh the detriments of mandamus review. *See Prudential,* 148 S.W.3d at 136. An appeal is inadequate when the parties are in danger of losing substantial rights. *See In re Van Waters & Rogers, Inc.,* 145 S.W.3d 203, 211 (Tex.2004) (orig. proceeding)(per curiam). Such a danger may arise when the appellate court could not cure the error, the error would vitiate a party's ability to present a viable claim or defense, or the error could not be made part of the appellate record. *See id.* Because temporary orders are not appealable, mandamus is an appropriate remedy when a trial court abuses its discretion involving temporary orders in a suit affecting the parent-child relationship. *In re Vernor,* 94 S.W.3d 201, 209–10 (Tex.App.-Austin 2002, no pet.); *see also Little v. Daggett,* 858 S.W.2d 368, 369 (Tex.1993).

■ In reviewing determinations regarding modifications of residency restrictions to permit a custodial parent's relocation, we must look to the public policy the legislature has set forth in the family code for custody issues and the guidelines developed from that policy. *See Lenz v. Lenz,* 79 S.W.3d 10, 14 (Tex.2002); *Interest of D.M.D.,* No. 05–07–01045–CV, 2009 WL 280465, *3 (Tex.App.-Dallas Feb. 6, 2009, no pet.) (not designated for publication). Public policy in Texas calls for frequent and continuing contact with parents when the parents are able to act in the child's best interest; providing the child with a safe, stable, nonviolent environment; and encouraging separated or divorced parents to share in the rights and duties of raising their child. *See* TEX. FAM. CODE ANN. § 153.001(a)(1)-(3); *Lenz,* 79 S.W.3d at 14. There is no comprehensive set of factors to consider in determining whether to permit a relocation as all suits affecting the parent-child relationship are fact driven. *Lenz,* 79 S.W.3d at 18–19.

In the context of a parent desiring to relocate, this Court has recently considered the following factors as potentially relevant in determining the child's best interest: the reasons for and against the move; the relocation's effect on a child's education, health, and leisure opportunities; accommodating any special needs or talents; the effect on extended family relationships; how the move will affect the noncustodial parent's visitation and communication with the child; the noncustodial parent's ability to relocate; and the child's age. *D.M.D.,* 2009 WL 280465 at *3.

■ In addition, we may also consider the following general factors in determining what is in the best interest of the child: (1) the child's desires; (2) the child's current and future physical and emotional needs; (3) any physical or emotional danger to the child in the present or the future; (4) the parental abilities of the individuals involved; (5) the programs available to those individuals to promote the child's best interest; (6) the plans of the child by these individuals; (7) the stability of the home; (8) acts or omissions by a parent tending to show that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.* Finally, we note that the child's best interest does not exist in a vacuum and, although the non-custodial parent's visitation rights are important, our analysis must concentrate primarily upon the general quality of life of the custodial parent and child because the child's best interest is closely intertwined with the custodial parent's well-being. *Id.* at *4.

Relator contends specifically that the trial court overreached and misapplied the law in imposing upon her a residency restriction without weighing the necessary factors used to identify the best interest of the children, by requiring her to establish she had made "extreme efforts" to find employment in Dallas County or a contiguous county, and by failing to impose a less stringent restriction that could adequately protect her ex-husband's visitation rights during the brief period before the case is called for trial and entry of a final divorce decree. We agree with relator.

Despite evidence in the record that relator had carried out an unsuccessful job search in the Dallas area, that she had accepted the only position she was offered, that she had purchased a home in North Carolina, that relator's father had moved to North Carolina to assist in the children's care, and that forcing her to relocate to the Dallas area without employment and no place to live would be financially devastating to her, the trial court overturned the associate judge's ruling and imposed a residency restriction be-

cause relator did not, in the trial court's view, make "extreme efforts" to find employment in Dallas which was the preferred residency "by leaps and bounds."

No authority supports the trial court's requirement that relator make "extreme efforts" to find employment within the residency-restricted area. To the contrary, courts favor modifying residency restrictions to allow the custodial parent to relocate when the proposed relocation will significantly improve the custodial parent's economic circumstances to the child's benefit. *See. e.g., Lenz,* 79 S.W.3d at 17 (concluding evidence was legally sufficient to support jury verdict modifying divorce decree to permit custodial parent to relocate to Germany in part because her employment opportunities were more favorable); *D.M.D.,* 2009 WL 280465 at *4 (reversing Kaufman County residency restriction to allow custodial parent to move to Austin where child's stepfather had secured higher paying job, testimony showed stepfather had searched unsuccessfully for job in Dallas, and no evidence he could obtain job in Dallas comparable to the job in Austin); *Interest of A.C.S.,* 157 S.W.3d 9, 22 (Tex. App.-Waco 2004, no pet.) (concluding trial court abused its discretion in finding children's best interest required return to Texas when doing so would place them in position of uncertainty because record did not clearly indicate that custodial parent would be able to easily locate suitable employment or housing in Texas).

Because we conclude the trial court imposed upon relator a greater burden than the law allows, we agree with her that the trial court abused its discretion in entering its August 19, 2009 order. *See Walker,* 827 S.W.2d at 840. *See also Lenz,* 79 S.W.3d at 17; *D.M.D.,* 2009 WL 280465 at *4; *A.C.S.,* 157 S.W.3d at 22. Because compliance with the trial court's temporary orders would require relator to choose between custody of her children and financial ruin, we further agree that relator has no adequate remedy at law.

Accordingly, we **CONDITIONALLY GRANT** relator's petition for writ of mandamus. The Court **ORDERS** the Honorable Lori Chrisman Hockett, Presiding Judge of the 255th Judicial District Court, to enter an order vacating the August 19, 2009 Order Following Hearing On Respondent's Notice of Appeal From Associate Judge's Hearing and reinstating the April 16, 2009 Associate Judge's Report pending trial.

We further **ORDER** the Honorable Lori Chrisman Hockett to file with this Court, within **TWENTY DAYS** of the date of this order, a certified copy of her order showing compliance with this Court's order. The writ of mandamus will issue only if the Honorable Lori Chrisman Hockett, Presiding Judge of the 255th Judicial District Court, fails to comply with this Court's opinion and order.