

In The

# Court of Appeals
## Seventh District of Texas at Amarillo

No. 07-20-00130-CV

IN THE INTEREST OF A.M., A CHILD

On Appeal from the 361st District Court
Brazos County, Texas
Trial Court No. 18-002774-CVD-361, Honorable Wendy Wood Hencerling, Presiding

December 23, 2020

## MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and DOSS, JJ.

Robert appeals from an order modifying conservatorship and ordering he pay child support. He contends that the trial court erred by 1) finding he had judicially admitted to the existence of materially and substantially changed circumstances, 2) finding that there had been a material and substantial change in circumstances, and 3) ordering child support in the absence of pleadings for same. We reverse.[1]

---

[1] Because this appeal was transferred from the Tenth Court of Appeals, we are obligated to apply its precedent when available in the event of a conflict between the precedents of that court and this Court. *See* TEX. R. APP. P. 41.3.

*Background*

Robert and Caroline were married in March of 2012, and a year later A. M. was born. About seven years later, that is, on February 22, 2019, the couple divorced. They lived in the Bryan-College Station area of Texas at the time. And, through the agreed decree memorializing their divorce, both parents were appointed joint managing conservators of A. M. However, Caroline received the exclusive right to designate the child's primary residence, so long as the location was restricted to "within the State of Texas."

Within months of the divorce, Caroline began looking for new employment. Her search resulted in a job offer from an entity located in Colorado Springs, Colorado. Having received that offer, she petitioned to expand the aforementioned geographic restriction to include "El Paso County, Colorado Springs, Colorado." Robert responded with a general denial. So too did he specifically deny in his answer that "there have been material and substantial changes in the circumstances of the parties or the child since the date of the last modification" and "the proposed changes [were] in the best interest of the child."

An "Original Counter-Petition to Modify the Parent-Child Relationship" soon followed. In it, Robert sought to 1) change his possession and access to A. M. and 2) modify the geographic restriction to "within 100 miles of Brazos County." The requested changes, though, were conditional. That is, he sought them "*if* the court finds that the circumstances of the child or of one of the two parents have materially and substantially changed." (Emphasis added).

2

At the eventual hearing on both petitions, the trial court concluded that Robert judicially admitted that a material and substantial change occurred given his filing of the "counter-petition." So too did it inform the litigants that the remaining issue it would litigate concerned the child's best interests.

Upon hearing evidence, the court eventually modified the geographic restriction to include El Paso County, Colorado Springs, Colorado. It also ordered Robert to pay monthly child support of $300 even though Caroline never sought such relief. This appeal ensured.

*Issue One – Judicial Admission*

Robert initially argues that the trial court erred in finding the conditional language in his "counter-petition" to equate to a judicial admission regarding the existence of a substantial and material change in circumstance. We agree.

Factual assertions in a pleading may constitute judicial admissions barring "the admitting party from later disputing the admitted fact." *See Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 568 (Tex. 2001); *Gonzalez v. Sanchez*, No. 07-16-00289-CV, 2018 Tex. App. LEXIS 1467, at *7 (Tex. App.—Amarillo Feb. 23, 2018, no pet.) (mem. op.). To be such an admission, though, the assertion must be nothing less than clear and unequivocal; nor may it be alleged in the alternative. *Holy Cross,* 44 S.W.3d at 568; *In re L.G.H.,* No. 10-16-00018-CV, 2017 Tex. App. LEXIS 4088, at *5–6 (Tex. App.—Waco May 3, 2017, no pet.) (mem. op.). Simply put, alternative pleadings and factual assertions uttered therein are not the fodder of judicial admissions. *See In re Burlington Coat Factory Warehouse of McAllen, Inc.*, 167 S.W.3d 827, 829 n.2 (Tex. 2005) (orig.

proceeding) (concluding that David's bill of review and restricted appeal were alternative pleadings and any factual assertions therein were not judicial admissions).

The purported admission at bar consisted of Robert's averment "that, *if* the court finds that the circumstances of the child or of one of the two parents have materially and substantially changed, then in view of those changes, [he] requests that the Court grant the following affirmative relief to [him] . . . ." (Emphasis added). Being in the alternative and, therefore, less than clear and unequivocal, the averment was and is not a judicial admission. This is especially so given his expressed denial (within his answer) of any purported change in circumstance having occurred; at the very least, the denial in his live pleading rendered the supposed admission less than clear and unequivocal. Because the trial court concluded otherwise, it erred.

*Issue Two – Material and Substantial Change*

Next, Robert contends that insufficient evidence illustrated the existence of any material and substantial change in circumstances without the purported judicial admission. We agree.

A conservatorship order may be modified if the "circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed" since rendition of the divorce decree and if modification is in the child's best interest. TEX. FAM. CODE ANN. § 156.101(a)(1)(A) (West 2014). Robert limited his argument on appeal to the first element; nothing was said about whether the modification to the geographic restriction was in the child's best interests. Thus, we limit our analysis to whether the trial court erred in concluding that circumstances had materially and substantially changed and, therefore, warranted the modification. *See*

4

*Smith v. Karanja*, 546 S.W.3d 734, 741–42 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (stating that the modification sought must be connected to the changed circumstance).

Next, a court's determination of whether circumstances have materially and substantially changed is not based on rigid rules and is fact specific. *In re A.J.M.*, No. 10-14-00284-CV, 2016 Tex. App. LEXIS 2596, at *4 (Tex. App.—Waco Mar. 10, 2016, no pet.) (mem. op.). It encompasses illustration that the conditions existing at the time of entry of the prior order changed when compared to the circumstances existing at the time modification was sought. *Hamilton v. Maestas*, No. 07-18-00320-CV, 2020 Tex. App. LEXIS 2911, at *6–7 (Tex. App.—Amarillo Apr. 7, 2020, no pet.) (mem. op.).

Furthermore, the decision is reviewed for a clear abuse of discretion. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990); *In re A.J.M.*, 2016 Tex. App. LEXIS 2596, at *5. That standard overlaps with traditional sufficiency standards of review in family law cases, creating a hybrid analysis. *In re A.J.M.*, 2016 Tex. App. LEXIS 2596, at *5. Additionally, the analysis is two-pronged. Those prongs consist of first assessing 1) whether the trial court had sufficient information upon which to exercise its discretion; and 2) whether it erred in the application of its discretion. *Id.* The focus of the first inquiry rests on the sufficiency of the evidence. *Id.* That of the second lies on the reasonableness of the decision when compared with the evidence of record. *Id.*

With the foregoing in mind, we again note that Caroline sought to modify the geographic restriction limiting A. M.'s residence to within Texas. The changed circumstances allegedly precipitating the modification was her receipt of a job offer in Colorado Springs, which job would pay her more money than she currently made in Bryan-College Station. We assume *arguendo* that seeking and securing another job was

5

a changed circumstance.[2]   Yet, a changed circumstance alone does not permit modification.  The change must also be substantial and material.  TEX. FAM. CODE ANN. § 156.101(a); *In re A.B.R.*, No. 04-17-00220-CV, 2018 Tex. App. LEXIS 6613, at *12 (Tex. App.—San Antonio Aug. 22, 2018, no pet.) (mem. op.).  And, the trial court's finding here that the supposed change was material and substantial does not survive analysis.

We begin that analysis by recalling words from the Supreme Court in *Short v. Short*, 354 S.W.2d 933 (Tex. 1962).  They told us that "the father's move from New Mexico to Nebraska for a better job is *not* a material change."  *Id.* at 936.  At the very least, the passage indicates that the mere desire for a better job and relocating to find one is not necessarily a material change.  Of course, it was made a hair under 60 years ago.  And, as the world evolves so too may views of our high court on a parent's relocation.  *See Lenz v. Lenz*, 79 S.W.3d 10, 14–15 (Tex. 2002) (addressing the "best-interest standard" in the relocation context and observing that though courts historically disfavored removing a child from the jurisdiction issuing the original custody decree, they have since left behind a relatively strict presumption against relocation and moved toward a more fluid balancing

---

[2] Yet, we must admit that evidence of record illustrated she had a penchant for regularly changing jobs.  From 2008 to 2010, Caroline operated her own business.  Then, she sold cars in Houston but quit that in 2010 because she "didn't like it" and "felt salty at the end of the day."  Her job with the Children's Museum of the Brazos Valley ended in 2012, when she chose to leave.  Three years later, she left Reynolds and Reynolds as project manager despite making "a good career for myself."  And, now she intends to end her "career" with her current employer, Capsher, within months of her divorce.  Past actions indicate future conduct.  *See J.D.S. v. Tex. Dep't. of Family & Protective Servs.*, 458 S.W.3d 33, 44 (Tex. App.—El Paso 2014, no pet.) (observing that "[f]uture conduct may indeed be predicted by past conduct"); *In re W.E.C.*, 110 S.W.3d 231, 247 (Tex. App.—Fort Worth 2003, no pet.) (involving the termination of parental rights and stating the same); *In re E.A.G.*, No. 14-01-01046-CV, 2002 Tex. App. LEXIS 8104, at *24 (Tex. App.—Houston [14th Dist.] Nov. 14, 2002, no pet.) (involving the termination of parental rights and stating that the trial court did not have to accept as true the mother's testimony about her future intentions or recent alterations in lifestyle since it had an opportunity to examine her past deliberate conduct as a means of predicting her future behavior).  One could certainly question whether Caroline's most recent job hunt was unanticipated given her history of regularly leaving them after several years.  *See Smith,* 546 S.W.3d at 740 (stating that an anticipated circumstance cannot be evidence of a material or substantial change of circumstances).

test involving multiple factors). So, we can concede that seeking a "better job" may be one of many factors in the overall analysis. *See In re E. C. M.,* No. 07-09-00242-CV, 2010 Tex. App. LEXIS 5981, at *8–9 (Tex. App.—Amarillo July 28, 2010, no pet.) (mem. op.) (noting that evidence of an impending marriage, opportunity for a better job, and a reduction in father's involvement with the child supported the conclusion that circumstances had materially and substantially changed). Yet, is the employment opportunity in Colorado a substantial or material improvement? The trial court had to have before it sufficient evidence to answer the question affirmatively before it could permissibly modify the geographic restriction it implemented seven months earlier. Otherwise, its decision would be unreasonable.

It obviously answered the question in the affirmative by finding that "[t]he new job with Church Community Builder would improve Caroline's financial situation and ability to provide a better standard of living for [A. M.]" Furthermore, the only evidence upon which it made the findings consisted of the terms of the job offer. Under it, Caroline's annual income would be $95,000. So too would she receive a $5,000 signing bonus and the chance for yearly raises. That, in her estimation, would permit her to buy a home in Colorado Springs, save for A. M.'s college education, eventually buy her six-year-old son a car, and forgo a second job.[3] In comparison, Caroline had a job in the Bryan-College Station area paying her $75,000 a year and worked another involving wedding

---

[3] One can interpret this testimony as insinuating that her current employment failed to provide her the same economic opportunities that the Colorado Springs job would. Yet, the record indicated that she had the economic means to pay $25,000 to her legal counsel to seek the modification at issue and forgo child support from Robert. That evidence hardly illustrates that her existing financial situation and employment impeded her ability to pursue goals desired by many parents.

7

photography.  What the latter paid went unmentioned, as did the burden it placed on her time.

At first blush, a difference in annual income of $20,000 coupled with a $5,000 bonus would seem significant.  Yet, first blushes are often deceptive.  To receive that increase entailed moving from Bryan-College Station to the Colorado Springs, Colorado area.  No one can rationally deny that the cost of living differs from state to state and city to city, especially when the place in which one hopes to live is a popular venue.  To infer that one would reap **material and substantial** economic benefit by moving from Bryan-College Station to Colorado Springs simply because he or she would be paid $20,000 a year more and receive a one-time bonus of $5,000 is folly.  Proving that inference to be reasonable requires evidence of what it would cost to live in Colorado Springs versus Bryan-College Station.  Caroline denied the trial court that evidence.  Nothing was said about the cost of housing in either locale, irrespective of whether one rents or owns.  The same is true about other living, educational, and work expenses, including taxes.  Indeed, Colorado has a state income tax while Texas does not.  *See* § 39-22-101 et seq., C.R.S. 2017 (cited as the "Colorado Income Tax Act of 1987").

To that, we add Caroline's offer to pay the travel expense related to facilitating visitation between Robert and his son, and the trial court's actual imposition of that expense on her.  Such travel expense further burdens the economic resources provided in Colorado.  It entails paying for at least nine trips a year under the court's new possession order.  And, while the cost of airfare on a major airline (which the trial court ordered A. M. to fly) may drop, it also rises.

Without evidence comparing what the "standard of living" costs in both places and in view of the increased travel and income tax expense Caroline will incur by moving, the trial court's finding that "[t]he new job with Church Community Builder would improve [her] financial situation and ability to provide a better standard of living for" her son is actually speculation. It may be a material benefit or it may not. And, a ruling is not reasonable when based solely on speculation.

Of course, other factors may play into the ultimate substantial and material change equation. And, apparently Caroline proffered and the trial court considered some. One involved Caroline's loss of her Capsher job in Bryan-College Station. Not only did she argue that it was imminent, but the trial court also commented upon it when finding that various of her projects were going to be unfunded. Yet, let us look at the relevant evidence on the matter. It consists of her testimony, which actually belies any suggestion of the prospect of her losing the Capsher job which spawned her search for a new adventure.

As Caroline said at trial, she began working for the company as a project manager overseeing one project. Unlike other employees, her supervisory duties soon encompassed two projects. From there they grew to overseeing four projects at a time. That was unique for a Capsher employee, in her view. Again, other project managers supervised only one project at a time but her particular abilities allowed her to supervise more. Eventually, her employer told her about a loss in funding related to three of her four projects. Yet, we found nothing of record indicating that she was also informed that her continued employment was dependent upon the existence of funding for all the projects. Nor did she cite us to such evidence. And, it is rather illogical to infer that an

9

employer would fire the only employee it had who allegedly succeeded in ways that no other employee had simply because economic circumstances called for reducing the employee's duties to a level equal to co-workers. This may be why Caroline actually never testified that she saw termination in her future. Instead, she merely came to the "conclusion that if I ever wanted to make an exit, now – there's no better time than – than start making an exit strategy now." In other words, circumstances were not causing her to look for new employment. She merely opted to leave, just as she did her earlier jobs.

Another factor involves the quality of schools in Colorado and how they supposedly are so much better than those in Texas. The schools in Colorado were ranked #10 in the nation by some entity while those in Texas were ranked #36. That purports to be an overall ranking or average of all schools. Yet, A. M. would not be going to some fictitious overall school but rather a specific one. So, merely tossing out statistics about overall rankings means nothing. As for the particular school he would attend, it was ranked "11th" in the city, according to Caroline. On the other hand, Caroline assigned no ranking to the College Station school attended by A. M., though she conceded to having no complaint about the education it provided her child. So, quality of education between current and prospective schools may be a quantitative factor but not one here pushing the relocation to the level of a material and substantial change.

As for the evidence of having family available in Colorado Springs to provide a support system to Caroline and A. M. and whether that intangible benefit tilts the scale in favor of finding a material change in circumstance, the same was and is true of Bryan-College Station. There are family in both places. The family in College Station, though, consisted of Robert's relatives (such as his mother and A. M.'s half-sister). Moreover,

10

Caroline's mother and father live in Katy, Texas, about 80 miles away. In Texas, 80 miles borders on a mere hop, skip and jump away. So, viewed in perspective, the presence of a support system in Colorado offers no material difference. She had one where she lived.

No doubt there is evidence that Robert did not pursue every opportunity to interact with A. M. And, a diminishment in the bond between parent and child is a factor to consider in assessing the existence of changed circumstances. *See In re E.C.M., supra.* Yet, Robert did not abandon A. M. or forgo all interaction. He continued to exercise regular visitation, though it may not have been to the extent Caroline thought sufficient. So, Robert's failure to pursue every chance to be with A. M**.** during the short period between the divorce and petition to modify the geographic restriction hardly denotes a material and substantial change in circumstances since the divorce.

As for the insinuation that Caroline could only get a new job in Colorado Springs, she did testify that she sought employment in Dallas and Houston. The extent of her efforts, though, is unknown. She did not say. While it may be that a parent need not undertake extreme efforts to find employment within a residency restricted area, as Caroline avers, *see In re Cooper*, 333 S.W.3d 656, 661 (Tex. App.—Dallas 2009, orig. proceeding) (so stating), we find no authority saying that meager effort suffices. The record before us does not illustrate in which end of the spectrum to place Caroline's attempts. One cannot deny that Texas is a big state with many cities and potential employers. The existing geographic restriction **to which she agreed only months earlier** allowed Caroline to live in any one of those cities. Simply because whatever nondescript effort Caroline expended in Dallas and Houston resulted in no offers does not allow one to rationally infer that she had little choice but to leave Texas to find an

11

acceptable job.  Given that, the factor does not serve as evidence of a materially changed circumstance.

Purported economic benefit serves as the foundation to Caroline's argument.  Yet, as explained above, the limited evidence of record is not enough to permit one to rationally infer that her economic circumstances would significantly improve to the child's benefit if allowed to take the Colorado Springs job.  *See In re Cooper*, 333 S.W.3d at 661 (stating that "courts favor modifying residency restrictions to allow the custodial parent to relocate when the proposed relocation will significantly improve the custodial parent's economic circumstances to the child's benefit").  There may be tangential benefits of a move, but they alone were not enough to carry the burden of establishing a material and substantial change in either her life or that of A. M.  They are not enough to warrant further imposition upon the parent-child bond between Robert and A. M. already caused by the recent divorce.  *See id.* at 660 (stating that public policy in Texas calls for frequent and continuing contact between parents and their children when the former are able to act in the child's best interest).  For this reason, we conclude that one could not reasonably find that circumstances since the divorce had materially and substantially changed to warrant expanding the geographic restriction.  So, in altering the restriction under the record before it, the trial court abused its discretion which abuse resulted in harm to Robert.  *See* TEX. R. APP. P*.* 44.1(a) (permitting reversal when an error causes harm, that is, when it probably caused the rendition of an improper judgment).

12

*Issue Three – Child Support*

Finally, Robert contends that the trial court erred in ordering him to pay child support because Caroline did not plea for same, and the matter was not tried by consent. We agree.

The divorce decree executed by the court and parties imposed no child support obligation upon Robert. Nor did Caroline ask that such an obligation be imposed when she petitioned to modify the terms of that decree. Indeed, she expressly disclaimed any interest in child support from Robert in the affidavit attached to her petition and in a pretrial document describing the relief she sought. Furthermore, the matter was not discussed at trial.

The Family Code expressly states that the Rules of Civil Procedure apply to modification suits. TEX. FAM. CODE Ann. § 156.004 (West 2014) (providing that the "Texas Rules of Civil Procedure applicable to the filing of an original lawsuit apply to a suit for modification under this chapter"); *Baltzer v. Medina*, 240 S.W.3d 469, 476 (Tex. App.—Houston [14th Dist.] 2007, no pet.). One such rule, i.e., 301, provides that a court's judgment must conform to the pleadings and the facts established by the evidence. *See* TEX. R. CIV. P. 301. Because of that rule, a party may not be granted relief in absence of pleadings to support it. *Fleet Oil & Gas, Ltd. v. EOG Res., Inc.,* No. 10-11-00289-CV, 2014 Tex. App. LEXIS 5597, at *16 (Tex. App.—Waco May 22, 2014, pet. denied) (mem. op.). The Tenth Court of Appeals apparently interpreted that rule to encompass an award of child support when none was requested. *See In re A.B.K.*, No. 10-06-00272-CV, 2007 Tex. App. LEXIS 8918, at *18 (Tex. App.—Waco Nov. 7, 2007, no pet.) (mem. op.) (concluding that the trial court did not abuse its discretion when denying child support

13

because "there are no pleadings to support an order requiring Jones to pay child support").[4] Given 1) the absence of any pleading to support the imposition of child support and 2) Caroline's expressed disclaimer for same, the trial court erred in imposing one *sua sponte*. Moreover, the error cannot be rectified by her now asserting that the matter was tried by consent.

For a matter to be tried by consent, it must be shown that the evidence on the issue was developed under circumstances indicating the parties understood the issue was part of the case and no one complained. *Johnson v. Oliver*, 250 S.W.3d 182, 186 (Tex. App.—Dallas 2008, no pet.). Whether an issue was so tried is determined by examining the record, not for evidence of the issue, but rather for evidence that the issue was actually tried. *In re Marriage of Little*, No. 07-10-00134-CV, 2011 Tex. App. LEXIS 5858, at \*3–5 (Tex. App.—Amarillo July 28, 2011, no pet.) (mem. op.). And, in undertaking such a review of the record at bar, we find nothing to suggest that the imposition of a support obligation was ever sought much less tried without objection.

Having sustained appellant's three issues, we reverse the trial court's new order affecting the parent-child relationship and reinstate the former.

Brian Quinn
Chief Justice

---

[4] The Seventh Court of Appeals has acknowledged that though Rule 301 generally requires a judgment to conform to the pleadings, the Texas Supreme Court ameliorated the rule's effect in cases involving the parent-child relationship. *In re R.A.W.*, No. 07-13-00316-CV, 2015 Tex. App. LEXIS 3039, at \*15 (Tex. App.—Amarillo Mar. 27, 2015, no pet.) (mem. op.); *Kohutek v. Kohutek*, No. 07-10-0143-CV, 2011 Tex. App. LEXIS 7585, at \*12–13 (Tex. App.—Amarillo Sept. 16, 2011, no pet.) (mem. op.); *see Leithold v. Plass*, 413 S.W.2d 698, 701 (Tex. 1967) (stating that "[t]echnical rules of practice and pleadings are of little importance in determining issues concerning the custody of children"). Because this appeal was transferred from the 10th Court, though, we must abide by its precedent, as mentioned in our initial footnote.