

In The
Court of Appeals
Seventh District of Texas at Amarillo

_____

No. 07-25-00209-CV
_____

IN RE HISHAM SAYED ADAM, RELATOR

ORIGINAL PROCEEDING

August 21, 2025

Before QUINN, C.J., and PARKER and YARBROUGH, JJ.

We conditionally grant the petition for writ of mandamus of Hisham Sayed Adam. The latter requested us to direct the Honorable Matt Martindale, County Court at Law #2, to "set aside his July 16, 2025 Amended Temporary Orders and to reinstate the prior temporary orders restricting the Children's residence to Potter or Randall County, Texas."

*Background*

The record illustrates that Adam's wife, Muna Salah Osman, sought to modify the temporary orders executed at the inception of their divorce. No one disputes that she did so to facilitate her move to Suffolk County, N.Y. There, she intended to enhance her career by pursuing a fellowship in the medical specialty she selected upon completing a residency with Texas Tech University School of Medicine. The couple, with children in

hand, had moved to Amarillo from Austin so she could pursue her career via the residency.

Before the trial court convened its June 23, 2025 hearing on Osman's motion to modify temporary orders, she already had rented housing in Suffolk County. And, there she resided with the children despite our temporary order of July 18, 2025, staying the effect of the July 16, 2025 order lifting the geographic restrictions in dispute.

Before us, Adam contends that the trial court abused its discretion by amending the earlier temporary order contrary to the provisions of § 105.001(a) of the Texas Family Code. Allegedly, the elements of that section went unsatisfied. We agree.

### Discussion

Reviewing modifications to temporary orders may occur through a petition for writ of mandamus. *In re O'Connor*, No. 03-21-00159-CV, 2021 Tex. App. LEXIS 7255, at *3 (Tex. App.—Austin Aug. 31, 2021, orig. proceeding) (mem. op.) (stating that "[w]hen a trial court abuses its discretion in the issuance of temporary orders in a SAPCR, mandamus relief is proper because there are no adequate appellate remedies"); *accord In re Casanova*, No. 05-14-01166-CV, 2014 Tex. App. LEXIS 12638, at *6 (Tex. App.—Dallas Nov. 20 2014, orig. proceeding) (mem. op.) (stating that, because temporary orders are non-appealable, mandamus is an appropriate remedy when the order improperly causes a party to lose substantial rights). However, only when the trial court abuses its discretion in so modifying the orders may we grant relief. *See In re Getz*, No. 07-12-00278-CV, 2012 Tex. App. LEXIS 5385, at *2–3 (Tex. App.—Amarillo July 9, 2012, orig. proceeding) (mem. op.). Such abuse occurs when, among other things, the decision

2

fails to comport with the law. *Id.*; *In re D.M.L.*, No. 02-22-00451-CV, 2022 Tex. App. LEXIS 9358, at *6 (Tex. App.—Fort Worth Dec. 22, 2022, orig. proceeding) (mem. op.).

Next, the statute at issue permits modification of "a prior temporary order, for the safety and welfare of the child." TEX. FAM. CODE ANN. § 105.001(a). The onus is on the party seeking relief to satisfy that standard. *See In re O'Connor*, 2021 Tex. App. LEXIS 7255, at *3–4 (so placing the burden); *In re D.M.L.*, 2022 Tex. App. LEXIS 9358, at *9. That is, the movant must prove the change is for the safety and welfare of the child or children involved and no other purpose. *See In re Rogers*, 370 S.W.3d 443, 445 (Tex. App.—Austin 2012, orig. proceeding) (noting that the order, under § 105.001(a), must not be for a purpose other than the child's safety and welfare). Implicit within that test is the need to illustrate an immediate threat to the child's safety or welfare. *See In re D.M.L.*, 2022 Tex. App. LEXIS 9358, at *9. In modifying a temporary order under § 105.001(a) when the movant fails to establish that the child's safety and welfare are in jeopardy, the trial court abuses its discretion. *See id.* That is the circumstance at bar.

Again, no one denies that Osman sought relief from the geographic restriction because she 1) desired to further her own medical career and 2) found means to do that in New York.[1] The children were not under threat or otherwise in jeopardy. It may be that, as Osman indicated, allowing her to complete a three-year fellowship outside Texas could ultimately enhance her economic position and eventually better the children. But, the children were not in dire financial straits. Indeed, their therapist counseled the children about being "blessed" since their parents had adequate financial means.

---

[1] The sole factual ground alleged in the motion to modify consisted of: "Movant has secured a residency in the IM-Pulmonary Disease and Critical Care Medicine Program at the Stony Brook University Hospital."

Nor can we accept as competent evidence supporting the trial court's decision Osman's reference (in her responsive brief) to "unhealthy cultural training" by Adam. The training alluded to concerned the theological belief that men lead the household.[2] First, courts must tread not into theological matters, and the belief at issue is a theological tenet of Adam's religion. *In re Diocese of Lubbock*, 624 S.W.3d 506, 508–09 (Tex. 2021) (orig. proceeding) (stating that the "ecclesiastical abstention doctrine prohibits civil courts from delving into matters of 'theological controversy, church discipline, ecclesiastical government, or the conformity of the members of the church to the standard of morals required of them'" and quoting *Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 96 S. Ct. 2372, 49 L. Ed. 2d 151 (1976)). This is especially so when, second, no one testified that Adam's faith posed actual or imminent danger to the safety and welfare of any child. At most, the situation presented opportunity between the parents to discuss religious perspective touching the roles of men and women, which both Adam and Osman attempted. Third, and most importantly, parents, not the court system, have the right to guide a child's cultural and religious journey. TEX. FAM. CODE ANN. § 151.001(a)(1). Without evidence of a child facing imminent harm, we eschew Osman's seeming invitation to overstep the boundaries of § 151.001(a)(1). Fourth, and finally, neither Osman nor anyone else testified that being free to move away was needed to ameliorate the impact of any religious belief imparted by Adam; indeed, he would remain a father holding the right to provide religious foundation irrespective of his children's location.

---

[2] The religious principles are those apparently reflected in: "Men are the caretakers of women, as men have been provisioned by Allah over women and tasked with supporting them financially," *Qur'an* 4:34 (Mustafa Khattab, trans.), and "For the husband is the head of the wife as Christ is the head of the church, his body, of which he is the Savior." *Ephesians* 5:23.

As for financial necessity justifying removal of the geographic restriction, as Osman suggests, her ability to earn from $300,000 to $500,000 a year in Amarillo negates it. And, her being able to earn such an income in Amarillo precludes us from assigning her reliance on *In re Cooper*, 333 S.W.3d 656 (Tex. App.—Dallas 2009, orig. proceeding) much weight. In *In re Cooper*, the mother unsuccessfully attempted to find medical employment in Dallas or its environs. *Id.* at 658. Her only job offer came from an employer in North Carolina. *Id.* Here, Osman was not searching for employment but, rather, a fellowship to extend her education. Nor did she proffer evidence of inability to find employment as a physician in or around Amarillo pending finalization of the divorce. Again, undisputed evidence illustrated otherwise. And, though she would receive a stipend or salary during the New York fellowship, it amounted to $90,000 annually. The latter is far less than the $300,000 to $500,000 per year she could earn in Amarillo. We do not have here the "financial ruin" faced by the parent and deemed pivotal in *In re Cooper*. *See In re Cooper*, 333 S.W.3d at 661 (stating that "[b]ecause compliance with the trial court's temporary orders would require relator to choose between custody of her children and financial ruin, we further agree that relator has no adequate remedy at law").

That the court in *In re Cooper* said nothing of § 105.001(a) and its focus on the "safety and welfare" of the children also went unaddressed by Osman. Such was similarly omitted in her mention of *Lenz v. Lenz*, 79 S.W.3d 10 (Tex. 2002). While it too concerned modification of a geographic restriction, the restriction there originally appeared in a final divorce decree. *Id.* at 12. So, the applicable test was not that in § 105.001(a) of the Family Code but § 156.202. And, as described in *Lenz*, the elements of § 156.202

5

differed. Again, we deal with an interim order and its change being controlled by § 105.001(a).

As for other bits of evidence allegedly supporting the trial court's decision, they too fall short. All have one thing in common that denudes them, singularly or collectively, of pertinence in answering the ultimate question. None illustrated some immediate risk to the welfare and safety of his children. For instance, Adam may have ceased paying for extracurricular and tutoring activities that no court had ordered him to pay, but no one testified that such put the education, health, or safety of his three children at risk. Nor did Osman attempt to explain in her response how his ceasing to make voluntary payments endangered the children. As for the eldest child disliking Amarillo, likes and wants of a preteen often change with West Texas wind speed. The mutability of those personal desires hardly makes them evidence supporting an inference of risk to safety and welfare.

To summarize: modification under § 105.001(a) requires proof that the relief sought is for the safety and welfare of the child, and no other purpose. It also requires proof that the child's safety and welfare face immediate threat which the relief ameliorates. The evidence at bar, fell into the "no other purpose" category of the inquiry; that is, it illustrated Osman sought to nullify the geographic restrictions to further her own interests and goals. No immediate risk to the children's safety and welfare justifying the removal of geographic restrictions was shown. So, in vacating the restriction under the circumstances, the trial court's decision deviated from controlling law and evinced an instance of abused discretion.

We conditionally grant mandamus directing the trial court to vacate that portion of its July 16, 2025 Amended Temporary Orders 1) removing geographical restrictions

6

imposed by its earlier temporary order and 2) granting Muna Salah Osman the exclusive right to designate the primary residence of the children without a geographical restriction. Our writ of mandamus will issue only if the trial court fails to comply with the directive of this Court or otherwise moot the issue via final trial by September 19, 2025.

Brian Quinn
Chief Justice